UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEONEL VALDÉS, Individually and On Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| KANDI TECHNOLOGIES GROUP, INC., HU XIAOMING, JEHN MING LIM, and ZHU XIAOYING, | |
| Defendants. | |

Plaintiff Leonel Valdés ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Kandi Technologies Group, Inc. ("Kandi" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Kandi securities between

March 15, 2019 and November 27, 2020, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.       Kandi was founded in 2002 and is headquartered in Jinhua, the People's Republic of China ("China").  The Company, through its subsidiaries, designs, develops, manufactures, and commercializes electric vehicle ("EV") products and parts and off-road vehicles in China and internationally.

3.       Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational, and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Kandi artificially inflated its reported revenues through undisclosed related party transactions, or otherwise had relationships with key customers that indicated those customers did not have an arms length relationship with Kandi; (ii) the majority of Kandi's sales in the past year had been to undisclosed related parties and/or parties with such a close relationship and history with Kandi that it cast doubt on the arms-length nature of their relationship; (iii) all the foregoing, once revealed, was foreseeably likely to cast doubt on the validity of Kandi's reported revenues and, in turn, have a foreseeable negative impact on the Company's reputation and valuation; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

4.       On November 30, 2020, Hindenburg Research ("Hindenburg") published a report entitled "Kandi: How This China-Based NASDAQ-Listed Company Used Fake Sales, EV Hype to Nab $160 Million From U.S. Investors".  Citing "extensive on-the-ground inspection at Kandi's factories and customer locations in China, interviews with over a dozen former employees and

business partners, and review of numerous litigation documents and international public records",
the Hindenburg report asserted that almost 64% of Kandi's sales over the year have been to
undisclosed related parties.  The report also alleged that "[Kandi] has consistently booked revenue
it cannot collect, a classic hallmark of fake revenue[.]"

5.      Following publication of the Hindenburg report, Kandi's stock price fell $3.86 per
share, or 28.34%, to close at $9.76 per share on November 30, 2020.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline
in the market value of the Company's securities, Plaintiff and other Class members have suffered
significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of
the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the
SEC (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28
U.S.C. § 1331 and Section 27 of the Exchange Act.

9.      Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act
(15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b), as the alleged misstatements entered and the
subsequent damages took place in this Judicial District.  Pursuant to Kandi's most recent annual
report on Form 10-K, as of April 23, 2020, there were 52,849,441 shares of the Company's
common stock outstanding.  Kandi's common stock trades on the NASDAQ Global Select Market
("NASDAQ").  Accordingly, there are presumably hundreds, if not thousands, of investors in
Kandi's common stock located within the U.S., some of whom undoubtedly reside in this Judicial
District.

10.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

11.     Plaintiff, as set forth in the attached Certification, acquired Kandi securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

12.     Defendant Kandi is a Delaware corporation with principal executive offices located at Jinhua City Industrial Zone, Jinhua, Zhejiang Province, China, Post Code 321016.   The Company's common stock trades in an efficient market on the NASDAQ under the ticker symbol "KNDI."

13.     Defendant Hu Xiaoming ("Xiaoming") has served as Kandi's President and Chief Executive Officer at all relevant times.

14.     Defendant Jehn Ming Lim ("Lim") has served as Kandi's Chief Financial Officer ("CFO") since May 2020.

15.     Defendant Zhu Xiaoying ("Xiaoying") served as Kandi's Interim CFO from before the start of the Class Period until May 2020.

16.     Defendants Xiaoming, Lim, and Xiaoying are sometimes referred to herein as the "Individual Defendants."

17.     The Individual Defendants possessed the power and authority to control the contents of Kandi's SEC filings, press releases, and other market communications.   The Individual Defendants were provided with copies of Kandi's SEC filings and press releases alleged herein to

be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with Kandi, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

18.    Kandi and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

19.    Kandi was founded in 2002 and is headquartered in Jinhua, China. The Company, through its subsidiaries, designs, develops, manufactures, and commercializes EV products and parts and off-road vehicles in China and internationally.

### Materially False and Misleading Statements Issued During the Class Period

20.    The Class Period begins on March 15, 2019, when, during pre-market hours, Kandi filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2018 (the "2018 10-K"). For 2018, the Company reported net revenues of $112.44 million, which were purportedly comprised of $63.71 million of net revenues from unrelated parties and $48.73 million of net revenues from Zhejiang Kandi Electric Vehicles Co., Ltd. (the "JV Company") and related parties.

21.    The 2018 10-K also represented the following regarding Kandi's procedures for approval, including auditing, of related party transactions:

According to the Company policy on Related-Party Transactions (the "Policy"), a "Related Transaction" is "any transaction, includes, but not limited to, any financial transaction, arrangement, relationship (including any indebtedness or guarantee of indebtedness) or any series of similar transactions, arrangements or relationships, since the beginning of the Company's last fiscal year, or any currently proposed transaction, and the amount involved exceeds $120,000, and in which any related party had or will have a direct or indirect material interest". The Policy's definition of a "Related Party" is in line with the definition set forth in the instructions to Item 404(a) of Regulation S-K promulgated by the SEC.

Under the Policy, The Company's proposed material related transaction with related persons shall be submitted to the Board for consideration and discussion after an independent director presents his/her approval opinion beforehand. The Audit Committee shall conduct an audit on the related-party transaction and prepare a written opinion, and can engage independent financial advisers to issue a report as a basis for its judgment, then submit it to the Board. The Policy states that the Board meeting can be held as long as non-affiliated directors making up a majority of the Board attend, and any resolution made by the Board must be approved by a majority of non-affiliated directors.

22.    Appended as an exhibit to the 2018 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein Defendants Xiaoming and Xiaoying certified that "[t]he [2018 10-K] fully complies with the requirements of Section 13(a) of the Securities Exchange Act of 1934" and that "[t]he information contained in the [2018 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

23.    On April 28, 2020, Kandi filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2019 (the "2019 10-K"). For 2019, the Company reported net revenues of $135.74 million, which were purportedly comprised of $119.88 million of net revenues from unrelated parties and $15.86 million of net revenues from the JV Company and related parties.

24.    The 2019 10-K also contained statements identical to those referenced in ¶ 21, *supra*, regarding Kandi's procedures for approval, including auditing, of related party transactions.

25.     Appended as an exhibit to the 2019 10-K were substantively the same SOX certifications as referenced in ¶ 22, *supra*, signed by Defendants Xiaoming and Xiaoying.

26.     On June 5, 2020, Kandi filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2020 (the "1Q20 10-Q").  For the quarter, the Company reported unaudited net revenues of $6.37 million, which were entirely attributed to net revenues from unrelated parties.

27.     Appended as an exhibit to the 1Q20 10-Q were substantively the same SOX certifications as referenced in ¶ 22, *supra*, signed by Defendants Xiaoming and Lim.

28.     On August 10, 2020, Kandi filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2020 (the "2Q20 10-Q").  For the quarter, the Company reported unaudited net revenues of $19.44 million, less than a thousand dollars of which were attributed to net revenues from the JV Company and related parties.

29.     Appended as an exhibit to the 2Q20 10-Q were substantively the same SOX certifications as referenced in ¶ 22, *supra*, signed by Defendants Xiaoming and Lim.

30.     On November 9, 2020, Kandi filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2020 (the "3Q20 10-Q").  For the quarter, the Company reported unaudited net revenues of $18.72 million, all but six dollars of which were attributed to net revenues from unrelated parties.

31.     The 3Q20 10-Q also contained a risk factor purportedly aimed at addressing any perceived impropriety regarding Kandi's transactions with related parties, stating, in relevant part:

> [W]e have adopted policies and procedures, specifically a Related Party Transactions Policy, to identify, review, consider and approve such conflicts of interest. In general, if an affiliate of a director, executive officer or significant stockholder, intends to engage in a transaction involving us, that director, executive

officer or significant stockholder must report the transaction for consideration and approval by our audit committee and any such transactions have to be conducted at arms-length terms. We also follow the SEC regulations and the U.S. GAAP in reporting related party transactions. For example, under U.S. GAAP, it is permitted not to disclose a specific name of a major customer and/or supplier if they are not related parties to us. However, there are no assurances that negative media who may not have thorough understanding of the SEC disclosure rules and U.S. GAAP cast any incorrect critisizm on our disclosure.

From time to time, the allegations, regardless of their veracity, may result in consumer dissatisfaction, public protests or negative publicity, which could result in government inquiry or substantial harm to our brand, reputation, operations and stock price.

Plainly, this risk warning was a generic, catch-all provision that was not tailored to Kandi's actual known risks regarding its undisclosed related party transactions, or relationships with key customers that indicated those customers did not have an arms length relationship with Kandi, much less that the majority of the Company's revenues over the past year had been derived from such parties.

32.     Appended as an exhibit to the 3Q20 10-Q were substantively the same SOX certifications as referenced in ¶ 22, *supra*, signed by Defendants Xiaoming and Lim.

33.     The statements referenced in ¶¶ 20-32 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Kandi artificially inflated its reported revenues through undisclosed related party transactions, or otherwise had relationships with key customers that indicated those customers did not have an arms length relationship with Kandi; (ii) the majority of Kandi's sales in the past year had been to undisclosed related parties and/or parties with such a close relationship and history with Kandi that it cast doubt on the arms-length nature of their relationship; (iii) all the foregoing, once revealed,

8

was foreseeably likely to cast doubt on the validity of Kandi's reported revenues and, in turn, have a foreseeable negative impact on the Company's reputation and valuation; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Emerges

34.     On November 30, 2020, Hindenburg published a report entitled "Kandi: How This China-Based NASDAQ-Listed Company Used Fake Sales, EV Hype to Nab $160 Million From U.S. Investors".  Citing "extensive on-the-ground inspection at Kandi's factories and customer locations in China, interviews with over a dozen former employees and business partners, and review of numerous litigation documents and international public records", the Hindenburg report asserted that almost 64% of Kandi's sales over the year have been to undisclosed related parties.  The report also alleged that "[Kandi] has consistently booked revenue it cannot collect, a classic hallmark of fake revenue[.]"

35.     Specifically, the Hindenburg report alleged, *inter alia*, that Hindenburg had "unmasked Kandi's 'unnamed' top customers and found that almost 64% of Kandi's last twelve months (LTM) sales have been to undisclosed related parties."  The Hindenburg report visited "[t]he company's largest customer, representing ~55% of last twelve months (LTM) sales," which Hindenburg identified as Jinhua Chaoneng Automobile Sales Co. Ltd. ("Chaoneng"), finding that it was based in the same industrial park as Kandi, adjacent to a Kandi factory, and in "[t]he same building [that] housed another entity used by Kandi as part of a [prior] separate fake sales scheme to collect illegitimate subsidies from the Chinese government, for which it was fined and sanctioned"; that Chaoneng had (at least at one point) shared an executive with Kandi and the same phone number as a Kandi subsidiary; and that Chaoneng had signage outside of its building, with the name "KANDI" appearing on one such sign, and the words (as translated by the Hindenburg

report) "Jinhua Kandi Electric Vehicle Chaoneng" appearing on another sign, both of which were supported by photos included in the Hindenburg report.

36.     With respect to Kandi's second largest customer, "representing ~9% of LTM sales," which Hindenburg identified as former Kandi subsidiary Zhejiang Kuke Sports Technology Co., Ltd. ("Kuke"), the Hindenburg report found that "corporate records on QCC.com still refer to [Kuke] as being a part of Kandi," even though it was spun-off from Kandi back in 2008;  that "Kuke's website still shows close ties to Kandi," with "[t]he homepage featur[ing] a large image of Kandi's factory," that Kuke's "logo integrates Kandi with its corporate name" on the website, and that "[t]he site also features the brand name 'Jasscol', which is a registered trademark *owned by Kandi*" (emphasis in original); that "30% of Kuke's [h]istorical [e]xports [w]ere to Massimo Motor Sports LLC," which shares an address with Kandi's U.S. headquarters, and which Hindenburg found sells products back to Kandi, making it both a top customer and a top supplier to Kandi; that 52% of Kuke's historical exports went to Jass Motorsports, Inc., which shared an executive officer with Kandi; and that 9% of Kuke's historical exports went to Lil Pick Up, Inc., which "rents space at . . . the headquarters for Kandi America," and which Hindenburg supported with "a picture of Lil Pick Up inventory sitting in [a Kandi] warehouse [at the Company's U.S. headquarters] covered with a tarp, dated from July of" 2020.

37.     With respect to Kandi consistently booking revenues it could not collect, the Hindenburg report cited, *inter alia*, the Company's own financial statements, which "corroborate[d] [Hindenburg's] concerns."   Specifically, the Hindenburg report noted the Company's Days Sales Outstanding metric, "which measures the average days it takes to convert accounts receivable into cash," was "278 days in the previous quarter, about 5.6x worse than its

closest auto peer," making the Company "an outrageous outlier," and which further cast doubt on the validity of the Company's reported revenues.

38.     Following publication of the Hindenburg report, Kandi's stock price fell $3.86 per share, or 28.34%, to close at $9.76 per share on November 30, 2020.

39.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

40.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Kandi securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

41.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Kandi securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Kandi or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

42.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

43.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

44.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Kandi;

- whether the Individual Defendants caused Kandi to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Kandi securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

45.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

46.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Kandi securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Kandi securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

47.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

48.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

49.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

50.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

51.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Kandi securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Kandi securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

52.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Kandi securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Kandi's finances and business prospects.

53.     By virtue of their positions at Kandi, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended

thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

54.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Kandi, the Individual Defendants had knowledge of the details of Kandi's internal affairs.

55.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Kandi.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Kandi's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Kandi securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Kandi's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Kandi securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

56.     During the Class Period, Kandi securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Kandi securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Kandi securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Kandi securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

57.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

58.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## **COUNT II**

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

59.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

60.     During the Class Period, the Individual Defendants participated in the operation and management of Kandi, and conducted and participated, directly and indirectly, in the conduct of Kandi's business affairs.  Because of their senior positions, they knew the adverse non-public information about Kandi's misstatement of income and expenses and false financial statements.

61.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Kandi's financial condition and results of operations, and to correct promptly any public statements issued by Kandi which had become materially false or misleading.

62.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Kandi disseminated in the marketplace during the Class Period concerning Kandi's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Kandi to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Kandi within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Kandi securities.

63.     Each of the Individual Defendants, therefore, acted as a controlling person of Kandi.  By reason of their senior management positions and/or being directors of Kandi, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Kandi to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Kandi and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

64.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Kandi.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  December 11, 2020                              Respectfully submitted,

                                                      POMERANTZ LLP

                                                      */s/ Jeremy A. Lieberman*
                                                      Jeremy A. Lieberman
                                                      J. Alexander Hood II
                                                      James M. LoPiano*
                                                      600 Third Avenue
                                                      New York, New York 10016
                                                      Telephone: (212) 661-1100
                                                      Facsimile: (212) 661-8665
                                                      jalieberman@pomlaw.com
                                                      ahood@pomlaw.com
                                                      jlopiano@pomlaw.com

                                                      POMERANTZ LLP
                                                      Patrick V. Dahlstrom
                                                      10 South La Salle Street, Suite 3505
                                                      Chicago, Illinois 60603

Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

(*pro hac vice* application forthcoming)

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.      I, ___Leonel Valdes_____, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.      I have reviewed a Complaint against Kandi Technologies Group, Inc. ("Kandi" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.      I did not purchase or acquire Kandi securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.      I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Kandi securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.      To the best of my current knowledge, the attached sheet lists all of my transactions in Kandi securities during the Class Period as specified in the Complaint.

6.      During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.      I declare under penalty of perjury that the foregoing is true and correct.


Executed   December 2, 2020
           (Date)



                                 Leonel Valdes
                                 (Signature)

                                 Leonel Valdes
                                 (Type or Print Name)

**Kandi Technologies Group, Inc. (KNDI)**                                    **Valdés, Leonel**

**List of Purchases and Sales**

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 11/25/2020 | 8,604 | $13.6000 |