UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| LEONEL VALDÉS, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>KANDI TECHNOLOGIES GROUP, INC., HU XIAOMING, JEHN MING LIM, and ZHU XIAOYING,<br><br>Defendants. | Civil Action No. 2:20-cv-06042-LDH-AYS<br><br>CLASS ACTION<br><br>Honorable LaShann DeArcy Hall |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR APPOINTMENT OF MAZEN ALTUBUH AS LEAD PLAINTIFF
AND APPROVAL OF SELECTION OF LEAD COUNSEL**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... ii

I.   PRELIMINARY STATEMENT ........................................................................................ 1

II.  STATEMENT OF ISSUES TO BE DECIDED ............................................................... 2

III. FACTUAL BACKGROUND ........................................................................................... 2

IV. ARGUMENT ................................................................................................................... 5

    A.   The Court should appoint Movant as Lead Plaintiff.......................................... 5

        i. Movant filed a timely motion and is willing to serve as Lead Plaintiff...................... 6

        ii. Movant has the largest financial interest in the relief sought by the Class................ 7

        iii.  Movant satisfies the Rule 23 requirements of typicality and adequacy.................. 8

            (a)  Movant's claims are typical of the claims of the Class. .................................. 8

            (b)  Movant is an adequate representative for the Class. ...................................... 9

    B.   Movant's choice of counsel should be approved. .......................................... 10

V.   CONCLUSION ............................................................................................................. 11

## TABLE OF AUTHORITIES

**Cases**

*Atwood v. Intercept Pharm., Inc.,*
  299 F.R.D. 414 (S.D.N.Y. 2014) ...................................................................................... 10

*Cullinan v. Cemtrex, Inc.,*
  287 F. Supp. 3d 277 (E.D.N.Y. 2018) ................................................................................. 8

*Elstein v. Net1 UEPS Techs., Inc.,*
  No. 13-cv-9100 (ER), 2014 WL 3687277 (S.D.N.Y. July 23, 2014) ..................................... 7

*Silverberg v. DryShips Inc.,*
  No. 17-cv-4547-SJF-ARL, 2018 WL 10669653 (E.D.N.Y. Aug. 21, 2018) ............... 7, 8, 9, 10

**Other Authorities**

15 U.S.C. § 78u-4(a)(3)(A) ................................................................................................ 5, 6

15 U.S.C. § 78u-4(a)(3)(B) .............................................................................................. passim

15 U.S.C. § 78u-4(e) .......................................................................................................... 7

Federal Rules of Civil Procedure 23 ............................................................................... 1, 6, 8, 9

Movant Mazen Altubuh ("Movant") respectfully submits this Memorandum of Law in support of his motion, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") for an Order: (1) appointing Movant as Lead Plaintiff on behalf of a Class consisting of all persons or entities who purchased or otherwise acquired Kandi Technologies Group, Inc. ("Kandi" or the "Company") securities between March 15, 2019 and November 27, 2020, both dates inclusive (the "Class Period"); and (2) approving Movant's selection of Roche Cyrulnik Freedman LLP ("RCF") as Lead Counsel for the putative Class.

## I.  PRELIMINARY STATEMENT

Currently pending before this Court is a securities class action lawsuit alleging Kandi, Hu Xiaoming, Jehn Ming Lim and Zhu Xiaoying (collectively, "Defendants") violated §§ 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder by the United States Securities Exchange Commission ("SEC").

The Court must appoint as lead plaintiff the movant it "determines to be most capable of adeq uately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i)-(B)(iii). Guiding that determination, the PSLRA creates a presumption that the most adequate plaintiff is the "person or group of persons" who "has the largest financial interest" and "otherwise satisfies the requirements of Rule 23 . . ." *Id.*

Movant believes he has the largest financial interest in the outcome of this litigation because, during the Class Period he lost approximately $134,690 due to the alleged fraud. *See* Declaration of Constantine P. Economides ("Economides Decl."), Exs. A-B. Moreover, the Movant satisfies Federal Rules of Civil Procedure ("Rule") 23 requirements because his claims are typical of the Class's claims, and he will fairly and adequately represent the Class's interests.

1

*See id.* at Ex. C. In addition, Movant's selection of RCF to serve as Lead Counsel should be approved because the Firm possesses extensive experience and expertise in securities fraud and other class actions. *See id.* at Ex. D. Accordingly, Movant respectfully requests that the Court: (1) appoint Movant as Lead Plaintiff; and (2) approve RCF as Lead Counsel.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1.    Whether the Court should appoint Movant as Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B); and

2.    Whether the Court should approve Movant's selection of RCF as Lead Counsel for the proposed Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

## III.    FACTUAL BACKGROUND

Kandi was founded in 2002 and is headquartered in Jinhua, the People's Republic of China ("China"). ¶ 2.[1] The Company, through its subsidiaries, designs, develops, manufactures, and commercializes electric vehicle ("EV") products and parts and off-road vehicles in China and internationally. *Id.*

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational, and compliance policies. ¶ 3. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Kandi artificially inflated its reported revenues through undisclosed related party transactions, or otherwise had relationships with key customers that indicated those customers did not have an arms-length relationship with Kandi; (ii) the majority of Kandi's sales in the past year had been to undisclosed related parties and/or parties with such a close relationship and history with Kandi that

---

[1] References to ¶ are to the Class Action Complaint for Violations of the Federal Securities Laws, ECF No. 1 ("Complaint").

2

it cast doubt on the arms-length nature of their relationship; (iii) all the foregoing, once revealed, was foreseeably likely to cast doubt on the validity of Kandi's reported revenues and, in turn, have a foreseeable negative impact on the Company's reputation and valuation; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times. *Id.*

The Class Period begins on March 15, 2019, when, during pre-market hours, Kandi filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2018 (the "2018 10-K"). ¶ 20. For 2018, the Company reported net revenues of $112.44 million, which were purportedly comprised of $63.71 million of net revenues from unrelated parties and $48.73 million of net revenues from Zhejiang Kandi Electric Vehicles Co., Ltd. (the "JV Company") and related parties. *Id.* The 2018 10-K also made representations regarding Kandi's procedures for approval, including auditing, of related party transactions. ¶ 21.

Appended as an exhibit to the 2018 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein Defendants Xiaoming and Xiaoying certified that "[t]he [2018 10-K] fully complies with the requirements of Section 13(a) of the Securities Exchange Act of 1934" and that "[t]he information contained in the [2018 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company." ¶ 22.

On April 28, 2020, Kandi filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2019 (the "2019 10-K"). ¶ 23. For 2019, the Company reported net revenues of $135.74 million, which were purportedly comprised of $119.88 million of net revenues from unrelated parties and $15.86 million of net revenues from the JV Company and related parties. *Id.* The 2019 10-K also contained statements identical to those referenced in ¶ 21, regarding Kandi's procedures for approval,

3

including auditing, of related party transactions. ¶ 24. Appended as an exhibit to the 2019 10-K were substantively the same SOX certifications as referenced in ¶ 22, signed by Defendants Xiaoming and Xiaoying. ¶ 25.

On June 5, 2020, Kandi filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2020 (the "1Q20 10-Q"). ¶ 26. For the quarter, the Company reported unaudited net revenues of $6.37 million, which were entirely attributed to net revenues from unrelated parties. *Id.* Appended as an exhibit to the 1Q20 10-Q were substantively the same SOX certifications as referenced in ¶ 22, signed by Defendants Xiaoming and Lim. ¶ 27.

On August 10, 2020, Kandi filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2020 (the "2Q20 10-Q"). ¶ 28. For the quarter, the Company reported unaudited net revenues of $19.44 million, less than a thousand dollars of which were attributed to net revenues from the JV Company and related parties. *Id.* Appended as an exhibit to the 2Q20 10-Q were substantively the same SOX certifications as referenced in ¶ 22, signed by Defendants Xiaoming and Lim. ¶ 29.

On November 9, 2020, Kandi filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2020 (the "3Q20 10-Q"). ¶ 30. For the quarter, the Company reported unaudited net revenues of $18.72 million, all but six dollars of which were attributed to net revenues from unrelated parties. *Id.*

The 3Q20 10-Q also contained a risk factor purportedly aimed at addressing any perceived impropriety regarding Kandi's transactions with related parties. However, this risk warning was a generic, catch-all provision that was not tailored to Kandi's actual known risks regarding its undisclosed related party transactions or relationships with key customers. The risk warning did

4

not indicate that those customers lacked an arms-length relationship with Kandi or that the majority of the Company's revenues over the past year had been derived from such related parties. ¶ 31. Appended as an exhibit to the 3Q20 10-Q were substantively the same SOX certifications as referenced in ¶ 22, signed by Defendants Xiaoming and Lim. ¶ 32.

On November 30, 2020, Hindenburg published a report entitled "Kandi: How This China-Based NASDAQ-Listed Company Used Fake Sales, EV Hype to Nab $160 Million From U.S. Investors". Citing "extensive on-the-ground inspection at Kandi's factories and customer locations in China, interviews with over a dozen former employees and business partners, and review of numerous litigation documents and international public records," the Hindenburg report asserted that almost 64% of Kandi's sales over the year have been to undisclosed related parties. The report also alleged that "[Kandi] has consistently booked revenue it cannot collect, a classic hallmark of fake revenue[.]" ¶ 34.

Following publication of the Hindenburg report, Kandi's stock price fell $3.86 per share, or 28.34%, to close at $9.76 per share on November 30, 2020. ¶ 38. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages. ¶ 39.

## IV.   ARGUMENT

### A.  The Court should appoint Movant as Lead Plaintiff.

Within the first 20 days of filing suit, the PSLRA requires the named plaintiff to publish a notice in a widely circulated national business publication or wire service that advises potential class members that the action is pending and that they have a right to move for lead plaintiff in 60 days. 15 U.S.C. § 78u-4(a)(3)(A).

The Court must consider any motion seeking appointment as lead plaintiff within 90 days

5

of that notice and must appoint the movant that the court determines to be "most capable of adequately representing the interests of class members." *See* 15 U.S.C. § 78u-4(a)(3)(B)(i).

The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" who:

> (aa)   has either filed the complaint or made a motion in response to a notice;
>
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by a Class member that the presumptive most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Movant has complied with the PSLRA's procedural prerequisites and possesses, to the best of his knowledge, the largest financial interest in the litigation of any other class member seeking appointment as Lead Plaintiff. Movant is also unaware of any unique defenses that Defendants could raise against him. Thus, Movant is entitled to the presumption that he is the most adequate plaintiff to represent the Class. He also satisfies the typicality and adequacy requirements of Rule 23 and, as a result, should be appointed Lead Plaintiff in the Action.

### i.   Movant filed a timely motion and is willing to serve as Lead Plaintiff.

Within 20 days of the filed complaint, Plaintiff Leonel Valdés published the required notice through *PR Newswire*, a widely circulated national business-oriented wire service. 15 U.S.C. § 78u-4(a)(3)(A)(i). *See* Economides Decl., Ex. E. Movant timely filed his motion within the next 60 days, *i.e.,* by February 9, 2021. 15 U.S.C. § 78u-4(a)(3)(A)(i). Movant has filed herewith a

PSLRA certification and declaration attesting that he is willing to serve as Lead Plaintiff of the Class and remains willing to provide testimony at deposition and trial, if necessary. *See* Economides Decl. Exs. A, C. Accordingly, Movant has satisfied the first requirement to serve as Lead Plaintiff of the Class.

> **ii.    Movant has the largest financial interest in the relief sought by the Class.**

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff…is the person or group of persons that…has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). As demonstrated herein, Movant has the largest financial interest in the relief sought by the Class and should therefore be presumed the most adequate plaintiff to serve as Lead Plaintiff. *See* Economides Decl., Exs. A-B.

In assessing the largest financial interest, the Court generally considers: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) total net funds expended during the class period; and (4) the approximate losses suffered during the class period." *Silverberg v. DryShips Inc.,* No. 17-cv-4547-SJF-ARL, 2018 WL 10669653 (E.D.N.Y. Aug. 21, 2018).[2,3] The approximate losses suffered is considered the most important factor. *Id.*

During the Class Period, Movant: (1) purchased 32,000 Kandi shares; (2) retained 23,000

---

[2] "The PSLRA does not specify a method for calculating which plaintiff has the 'largest financial interest,' and neither the Supreme Court nor the Second Circuit has provided instruction on the appropriate method." *Elstein v. Net1 UEPS Techs., Inc.,* No. 13-cv-9100 (ER), 2014 WL 3687277, at *6 (S.D.N.Y. July 23, 2014). Damages are calculated based on (i) the difference between the purchase price paid for the shares and the average trading price of the shares during the 90-day period beginning on the date the information correcting the misstatement was disseminated, *or* (ii) the difference between the purchase price paid for the shares and the average trading price of the shares between the date when the misstatement was corrected and the date on which the plaintiff sold their shares, if they sold their shares before the end of the 90-day period. 15 U.S.C. § 78u-4(e).

[3] Unless otherwise noted, internal citations are omitted.

7

net shares; (3) expended $455,335.60 net funds; and (4) as a result of Defendants' materially false and misleading statements, suffered substantial losses of approximately $134,690. Movant, therefore, has a significant financial interest in the outcome of this case. To Movant's knowledge, moreover, there are no other applicants who have sought, or are seeking, appointment as Lead Plaintiff who have a larger financial interest and also satisfy Rule 23.

### iii.    Movant satisfies the Rule 23 requirements of typicality and adequacy.

In addition to demonstrating the largest loss, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii). Rule 23(a) requires the following four prerequisites be satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In a PSLRA case, at this stage of the litigation, "movants seeking appointment as lead plaintiff need only make a preliminary, prima facie showing that the typicality and adequacy requirements of Fed. R. Civ. P. 23(a) would be met." *Silverberg,* No. 17-cv-4547-SJF-ARL, 2018 WL 10669653 at *8. As detailed below, Movant satisfies both the typicality and adequacy requirements.

### (a) Movant's claims are typical of the claims of the Class.

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. "The typicality requirement is met where each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cullinan v. Cemtrex, Inc.,* 287 F. Supp. 3d 277, 288 (E.D.N.Y. 2018).

Movant's claims are typical of, if not identical to, the claims of other members of the

8

putative Class. *See id.* Movant, like the other members of the Class, acquired Kandi securities during the Class Period at prices artificially inflated by Defendants' materially false and misleading statements and was damaged thereby when the truth was revealed. Movant suffered losses similar to those of other Class members, and his losses resulted from Defendants' common course of wrongful conduct. Accordingly, Movant satisfies the typicality requirement.

**(b) Movant is an adequate representative for the Class.**

Under Rule 23(a)(4), a representative party must "fairly and adequately protect the interests of the class." In order for a movant to satisfy the adequacy requirement, "(1) there should be no conflict between the interests of the class and the named plaintiff nor should there be collusion among the litigants; (2) the parties' attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (3) the lead plaintiff should have a sufficient interest in the outcome to ensure vigorous advocacy." *Silverberg,* No. 17-cv-4547-SJF-ARL, 2018 WL 10669653 at *8.

Movant has met the requirements under Rule 23(a)(4) to fairly and adequately protect the interests of the putative Class. *See* Economides Decl., Exs. A-D. Specifically, Movant has retained counsel who, as shown below, is experienced in litigating lawsuits such as this Action; has demonstrated, *supra*, his significant interest in the outcome of the case; and has no reason to believe that his interests are adverse to those of the Class. Therefore, Movant is an adequate representative of the putative Class.

Accordingly, at this stage of the proceedings, Movant has met all of the requirements for appointment as Lead Plaintiff. Movant has timely filed his motion, has sustained the largest amount of losses from Defendants' alleged wrongdoing, and has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23. Thus, Movant is entitled

to the presumption that he is the most adequate plaintiff and, as such, should be appointed to lead this Action. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)-(II).

**B. Movant's choice of counsel should be approved.**

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval. "Although the Court maintains discretion in appointing lead counsel to protect the interests of the class, the statute evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." *Atwood v. Intercept Pharm., Inc.,* 299 F.R.D. 414, 417 (S.D.N.Y. 2014)); *see also Silverberg,* No. 17-cv-4547-SJF-ARL, 2018 WL 10669653 at *11 ("there is a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection.").

The record confirms that Movant's selection of counsel should be approved; RCF is qualified, experienced, and capable of effectively prosecuting this Action on behalf of Movant and the Class. *See* Economides Decl., Exs. C-D.

Most recently, RCF was appointed, and is serving as, Lead Counsel in the following securities fraud class actions: *Burnham v. Qutoutiao Inc. et al.,* No. 1:20-cv-06707 (S.D.N.Y.); *Chapman v. Fennec Pharma Inc. et al.,* No. 1:20-cv-812 (M.D.N.C.); and *Garcia v. J2 Global, Inc. et al.,* No. 2:20-cv-06096 (C.D. Cal.). RCF has also been appointed, and is serving, as Co-Lead Counsel in the following securities fraud class action cases: *Clifford et al. v. Tron Found. et al.,* No. 1:20-cv-02804 (S.D.N.Y.); *Clifford v. Bibox et al.,* No. 1:20-cv-02807 (S.D.N.Y.); *Zhang v. Civic Techs., Inc. et al.,* No. 1:20-cv-02811 (S.D.N.Y.); *Clifford v. Status Research and Development GmbH et al.,* No. 1:20-cv-02815 (S.D.N.Y.); *Williams et al. v. HDR Global Trading Ltd et al.,* No. 1:20-cv-02805 (S.D.N.Y.); *Clifford v. KayDex Pte. Ltd. et al.* No. 1:20-cv-02812

10

(S.D.N.Y.); *Zhang v. BProtocol Found., et al.,* No. 1:20-cv-02810 (S.D.N.Y.); *Lee et al. v. Binance et al.*, No. 1:20-cv-02803 (S.D.N.Y.); *Williams v. Quantstamp, Inc. et al.*, No. 1:20-cv-02813 (S.D.N.Y.); *Williams v. KuCoin et al.*, No. 1:20-cv-02806 (S.D.N.Y.); *Lowry v. RTI Surgical Holdings, Inc. et al.,* No. 1:20-cv-01939 (N.D. Ill.); and *Hartel v. Geo Group, Inc. et al.,* No. 9:20-cv-81063 (S.D. Fla.). Additionally, RCF has been appointed, and is serving, as Co-Lead Counsel in *Leibowitz v. iFinex Inc.*, No. 1:19-cv-09236-KPF (S.D.N.Y.), an antitrust, market manipulation, and RICO class action.

Moreover, RCF's attorneys have decades of experience in complex litigation, including securities litigation and class actions on behalf of plaintiffs and defendants. *See* Economides Decl., Ex. D. The firm's attorneys have previously been appointed as co-lead counsel in securities class actions and/or have clerked for federal judges sitting in the Southern District of New York, Eastern District of New York, Northern District of California, Eastern District of Pennsylvania, Eastern District of Louisiana, Southern District of Florida, District of Connecticut, Second Circuit, Fourth Circuit, Fifth Circuit, Ninth Circuit, and United State Supreme Court. *See id.* Movant respectfully submits that this wealth of experience and qualifications demonstrates RCF's ability to provide the highest caliber of representation to the Class.

## V.   CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court: (1) appoint the Movant as Lead Plaintiff; (2) approve Movant's selection of RCF as Lead Counsel for the putative Class; and (3) grant such other relief as the Court may deem just and proper.

DATED: February 9, 2021          Respectfully Submitted,

                                 **ROCHE CYRULNIK FREEDMAN LLP**

                                 */s/ Constantine P. Economides*
                                 Constantine P. Economides

11

Velvel (Devin) Freedman (*pro hac forthcoming*)
Ivy T. Ngo (*pro hac forthcoming*)
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 971-5943
Email: ceconomides@rcfllp.com
Email: vel@rcfllp.com
Email: ingo@rcfllp.com

*Counsel for Lead Plaintiff Movant Mazen Altubuh and Proposed Lead Counsel for the Class*

**THE SCHALL LAW FIRM**
Brian Schall (*pro hac forthcoming*)
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: (424) 303-1964
Email: brian@schallfirm.com

*Additional Counsel for Lead Plaintiff Movant Mazen Altubuh*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify under penalty of perjury that on February 9, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

*/s/ Constantine P. Economides*
Constantine P. Economides
