```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
LEONEL VALDÉS, Individually and On
Behalf of All Others Similarly Situated,

                              Plaintiff,                    MEMORANDUM
                                                            AND OPINION
             -against-                                      CV 20-6042 (LDH)(AYS)

KANDI TECHNOLOGIES GROUP, INC.,
HU XIAOMING, JEHN MING LIM, and
ZHU XIAOYING,

                              Defendants.
----------------------------------------------------------------X
```

**ANNE Y. SHIELDS, United States Magistrate Judge:**

Before the Court are competing motions for appointment of lead plaintiff and lead counsel by movants Shawn Keating ("Keating") and the Kandi Group, comprised of individuals Manfred Schumacher ("Schumacher"), Mohammad Fakir ("Fakir"), and Kasser Akil ("Akil"), in this putative securities class action brought pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78j(b) and 78t, and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.  While several other movants initially filed motions for appointment of lead plaintiff and lead counsel, all but the two within movants have withdrawn their motions.  For the following reasons, the Kandi Group's motion is granted and Keating's motion is denied.

## BACKGROUND

Plaintiff, Leonald Valdés, commenced this putative class action on December 11, 2020, alleging violations by Defendants of Sections 10(b) and 20(a) of the Exchange Act, as well as Rule 10b-5, promulgated thereunder.  As set forth in the Complaint, Defendant Kandi Technologies Group, Inc. ("Kandi"), founded in 2002 and headquartered in Jinhua, the People's

1

Republic of China ("China"), through various subsidiaries, designs, develops, manufactures and commercializes electric vehicle products and parts, as well as off-road vehicles, in China and internationally. (Compl. ¶ 2.) Kandi's stock trades on the NASDAQ under the ticker symbol "KNDI". (Id. ¶ 12.)

Plaintiff alleges that, throughout the Class Period, Defendants made materially false and misleading statements regarding Kandi's business, operational and compliance policies. (Id. ¶ 3.) Specifically, Defendants made false or misleading statements or failed to disclose that: (1) Kandi artificially inflated its reported revenues through undisclosed related party transactions, or otherwise had relationships with key customers that indicated those customers did not have an arm's length relationship with Kandi; (2) the majority of Kandi's sales in the past year had been to undisclosed related parties or parties with such a close relationship and history with Kandi that it cast doubt upon the arms-length nature of their relationship; (3) the foregoing, once revealed, was foreseeably likely to cast doubt upon the validity of Kandi's reported revenues and, in turn, have a foreseeable negative impact on Kandi's reputation and valuation; and, (4) as a result, Kandi's public statements were materially false and misleading at all relevant times. (Id.)

On November 30, 2020, Hindenburg Research published a report asserting that almost sixty-four percent of Kandi's sales over the year were to undisclosed related parties, citing "extensive on-the-ground inspection at Kandi's factories and customer locations in China, interviews with over a dozen former employees and business partners, and review of numerous litigation documents and international public records." (Id. ¶ 4.) The report also alleged that Kandi "has consistently booked revenue that it cannot collect, a classic hallmark of fake revenue." (Id.)

In response to Hindenburg Research's report, Kandi's stock price plummeted $3.86 per share, or 28.34%, to close at $9.76 per share on November 30, 2020. (Id. ¶ 5.) Plaintiff alleges that as a result of Defendants' wrongful acts and omissions, and the resulting precipitous decline in the market value of Kandi's securities, Plaintiff and other putative class members have suffered significant losses and damages. (Id. ¶ 6.)

## DISCUSSION

### I. Legal Standard

Pursuant to the PSLRA, the Court "shall adopt a presumption that the most adequate plaintiff . . . is the person or persons" that: (1) has filed a complaint or made a motion in response to a notice; (2) has the "largest financial interest in the relief sought by the class;" and, (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa-cc). The presumption created by the statute may be rebutted "only upon proof" that the movant "will not fairly and adequately protects the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." Brady v. Top Ships Inc., 324 F. Supp. 3d 335, 345 (E.D.N.Y. 2018) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)).

"Two objective factors inform the district court's appointment decision: the plaintiffs' respective financial stakes in the relief sought by the class, and their ability to satisfy the requirements of Rule 23." Bensley v. FalconStor Software, Inc., 277 F.R.D. 231, 233 (E.D.N.Y. 2011) (quoting Hevesi v. Citigroup, Inc., 366 F.3d 70, 81 (2d Cir. 2004)). The decision with respect to appointing lead plaintiff "must be made on a case-by-case basis, taking account of the unique circumstances of each case." In re eSpeed, Inc. Secs. Litig., 232 F.R.D. 95, 99 (S.D.N.Y. 2005) (quoting In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. 42, 49 (S.D.N.Y. 1988)).

3

II.        <u>Aggregating Plaintiffs for Selection as Lead Plaintiff</u>

"The PSLRA expressly permits a 'person or group of persons' to be appointed" as lead plaintiff. <u>Goldstein v. Puda Coal, Inc.</u>, 827 F. Supp. 2d 348, 355 (S.D.N.Y. 2011) (quoting 15 U.S.C. 78u-4(a)(3)(B)(iii)(I)). However, the PSLRA does not define "how members of a 'group' should be related to one another." <u>Goldstein</u>, 827 F. Supp. 2d at 356 (citing <u>Varghese v. China Shenghuo Pharm. Holdings, Inc.</u>, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008)).

"The Second Circuit has not yet addressed whether unrelated class members may aggregate their claims in order to establish the 'largest financial interest' element." <u>Elstein v. Net1 UEPS Tech., Inc.</u>, No. 13 Civ. 9100, 2014 WL 3687277, at *4 (S.D.N.Y. July 23, 2014) (citation omitted). However, "[t]he majority of courts . . . permit[] unrelated investors to join together as a group seeking lead-plaintiff status on a case-by-case basis, if such grouping would best serve the class." <u>Kniffin v. Micron Tech., Inc.</u>, 379 F. Supp. 3d 259, 262 (S.D.N.Y. 2019) (quoting <u>Varghese</u>, 589 F. Supp. 2d at 392). The "overarching concern" that a court must consider when determining whether to permit plaintiffs to aggregate their claims is "whether the related members of the group can function cohesively and effectively manage the litigation apart from their lawyers." <u>Kniffin</u>, 379 F. Supp. 3d at 262 (quoting <u>Nakamura v. BRF S.A.</u>, No. 18-cv-2213, 2018 WL 3217412, at *3 (S.D.N.Y. July 2, 2018)).

Here, the competing movants consist of a single individual, Keating, and a group of three unrelated individuals – Schumacher, Fakir, and Akil – who, together, make up the Kandi Group. In opposition to the Kandi Group's motion, Keating argues that the Kandi Group is an improperly aggregated group because: (1) its members lack a preexisting relationship; (2) its joint declaration fails to make the requisite compelling showing of cohesion; and, (3) its

4

willingness to sever and be considered individually further highlights the fact that the group is not cohesive.

None of the foregoing arguments leads the Court to determine that the Kandi Group is improperly aggregated. "[A] group of persons with no pre-litigation history 'may be acceptable . . . so long as the group is relatively small and therefore presumptively cohesive.'" Elstein, 2014 WL 3687277, at *4 (quoting Freudenberg v. E*Trade Fin. Corp., Nos. 07 Civ. 8538, 07 Civ. 8808, 07 Civ. 9651, 07 Civ. 10400, 07 Civ. 10540, 2008 WL 2876373, at *4 (S.D.N.Y. July 16, 2008)). "Here, size weighs in the group's favor: with only three members, the [Kandi Group] is of the size that courts have generally found likely to be cohesive." Brady, 324 F. Supp. 3d at 347 (citation omitted). Moreover, the members of the Kandi Group have submitted a sworn joint declaration that sets forth:

> why the individual members chose to work as a group; how the group intends to function collectively, including how they plan to communicate; the protocol the group will use to address disagreements; background information regarding individual members of the group; and the members' willingness to accept the role and responsibilities of lead plaintiff.

Goldstein, 827 F. Supp. 2d at 356.

As to Keating's concerns regarding the Kandi Group's willingness to sever, the Court finds this argument unpersuasive in light of "the degree to which the [Kandi Group's] individual financial losses dwarf those of the competing movants." Id. Individual Kandi Group members Schumacher and Fakir have the largest and second-largest individual losses of any of the movants who have joined this action thus far. In fact, Schumacher lost more than twice what competing movant Keating attests to have lost. Schumacher's losses alone would qualify him as the party with the largest financial loss in this litigation. "The degree to which [Schumacher's]

5

losses overshadow those of the other movants further supports the Court's appointment of the [Kandi Group] as lead plaintiff." Id. at 357.

Accordingly, the Court finds that the Kandi Group is a proper group for purposes of appointment as lead plaintiff under the PSLRA and, as such, also possesses the largest financial interest in this action, rendering it the presumptive lead plaintiff.

III. Rule 23 Requirements

Pursuant to the PSLRA, a prospective lead plaintiff must not only possess the largest financial interest, but must also "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23 of the Federal Rules of Civil Procedure provides that a party seeking to serve as class representative must satisfy four requirements:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23. "[O]f the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative." Bensley, 277 F.R.D. at 235 (quoting In re Fuwei Films Sec. Litig., 247 F.R.D. 436, 436 (S.D.N.Y. 2008)). At the lead plaintiff stage, the movant need only make a "preliminary showing" that these requirements have been met. See Murphy v. JBS S.A., No. 17-CV-3084, 2017 WL 4480751, at *5 (E.D.N.Y. Oct. 6, 2017) (citing cases); see also Bensley, 277 F.R.D. at 235 (citation omitted).

    A. Typicality

Rule 23(a) provides that a lead plaintiff's claims must be "typical of the claims

6

. . . of the class." Murphy, 2017 WL 4480751, at *5 (quoting Fed. R. Civ. P. 23(a)(3)). This requirement is met if "the claims of the representative [p]laintiffs arise from the same course of conduct that gives rise to the claims of the other [c]lass members, where the claims are based on the same legal theory, and where the class members have allegedly been injured by the same course of conduct as that which allegedly injured the proposed representative." Murphy, 2017 WL 4480751, at *5 (quoting In re Livent, Inc. Noteholders Sec. Litig., 210 F.R.D. 512, 516 (S.D.N.Y. 2002)) (additional citation omitted) (alterations in original). "[T]he lead plaintiff's claims need not be 'identical' to the claims of the other members of the class;" rather, "similarity of legal theory may control." Bensley, 277 F.R.D. at 235 (quoting Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc., 229 F.R.D. 395, 412 (S.D.N.Y. 2004)).

Here, both the Kandi Group and Keating have made a prima facie showing that they satisfy the typicality requirement as they bring the same legal claims, premised on the same alleged facts, as all of the putative class members – i.e., that Defendants' material misstatements and omissions violated the federal securities laws. In fact, neither movant challenges this factor. Accordingly, both the Kandi Group's and Keating's interests and claims are "typical" of that of the class.

B. Adequacy

In determining adequacy, the Court considers "whether '(1) class counsel is qualified, experienced, and generally able to conduct the litigation' and whether '(2) class members do not have interests that are antagonistic to one another.'" Bensley, 277 F.R.D. at 235 (quoting Babcock v. Computer Assocs. Int'l, Inc., 212 F.R.D. 126, 131 (E.D.N.Y. 2003)). With respect to the first requirement, both movants have selected qualified and experienced counsel,

7

who have a successful history of representing plaintiffs in securities class actions. Again, neither movant disputes this factor.

Keating, however, challenges the adequacy of the Kandi Group on the grounds that it is an improper group whose interests are not aligned. However, Keating offers nothing to support such allegations. The presumption triggered under Rule 23 may only be rebutted "upon 'proof' that the presumptive lead plaintiff: (1) 'will not fairly and adequately protect the interest of the class,' or (2) 'is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'" Chauhan v. Intercept Pharm., No. 21-cv-00036, 2021 WL 235890, at *6 (S.D.N.Y. Jan. 25. 2021) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)). "[E]xacting proof is needed to rebut the presumption." Murphy, 2017 WL 4480751, at *5 (quoting In re Facebook, Inc., 288 F.R.D. 26, 40 (S.D.N.Y. 2012)). "Conclusory assertions and mere speculation will not suffice." Murphy, 2017 WL 4480751, at *5 (citing cases); see also Chauhan, 2021 WL 235890, at *6 ("Courts have made clear . . . that mere speculation is insufficient to rebut the presumption of adequacy."); Huang v. Airmedia Group Inc., No. 1:15-cv-4966, 2015 WL 10846763, at *2 (S.D.N.Y. Nov. 10, 2015) (stating that "speculative and hypothetical allegations should not prevent the appointment of lead plaintiff").

Keating fails to offer any proof that the Kandi Group is not an adequate lead plaintiff. Rather, he proffers nothing more than conclusory statements and speculation. Accordingly, Keating fails to rebut the presumption that the Kandi Group is the most adequate plaintiff herein and the Kandi Group is hereby appointed lead plaintiff.

IV.  Appointment of Lead Counsel

"The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel selection and counsel retention.'" Simco v. Aegean Marine

Petroleum Network Inc., Nos. 18 Civ. 4993, 18 Civ. 5165, 2018 WL 11226076, at *4 (S.D.N.Y. Oct. 30, 2018) (quoting In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig., No. 03-1529, 2008 WL 4128702, at *2 (S.D.N.Y. Sept. 3, 2008)). The Kandi Group has retained two firms to serve as its counsel – Bernstein Liebhard and Levi & Korsinsky. As demonstrated by the documentation submitted by the Kandi Group, both firms possess vast experience in securities litigation in general and both have served as lead counsel or co-lead counsel in numerous other federal securities actions. (Hopkins Decl., Ex. E.)

Based on the foregoing, the Court has no reason to believe that the Kandi Group's choice of counsel will not adequately represent the interests of the putative class. Accordingly, Bernstein Liebhard and Levi & Korsinsky are appointed as co-lead counsel.

## CONCLUSION

For the foregoing reasons, the Kandi Group's motion to be appointed lead plaintiff is granted and Keating's motion for such appointment is denied. The Kandi Group will serve as Lead Plaintiff in this action. Moreover, Bernstein Liebhard and Levi & Korsinsky will serve as Co-Lead Counsel.

**SO ORDERED.**

Dated: Central Islip, New York
April 20, 2021

/s/ Anne Y. Shields
Anne Y. Shields
United States Magistrate Judge

9